IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

MAR - 4 2016

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| LISA TAYLOR | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| MILLENNIUM CORP., | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

Civil Action No. 1:15-cv-1046

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Millennium Corp.'s Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1). As outlined below, the Court finds good cause to GRANT the Motion in part and DENY the motion in part.

### I. Background[1]

On June 1, 2005, Millennium hired Plaintiff Lisa Taylor, an African-American woman, who was living in New Orleans, LA, to work as an office manager in Millennium's Arlington, Virginia, office. At that time, Millennium was a fairly young business that was growing quickly. Taylor alleges that Millennium made several oral promises to her when she was hired. Specifically, Taylor alleges that Millennium promised her that she would be mentored and primed for a higher level position in the company, that "her wages would always be in at least the 75% of the median range," that she would be compensated for her contributions as one of the

---

[1] Because this matter is before the Court on a motion to dismiss, the following facts are drawn from the Complaint and accepted as true. *Tobey v. Jones*, 706 F.3d 379, 383 (4th Cir. 2013).

first employees in the company, and that she would be placed in a separate Bonus Pool based on her time with the company.

Taylor alleges that Millennium never followed through on these promises and engaged in continuous race, sex, and age discrimination throughout her time at Millennium. Taylor says this discrimination began in 2010. Around this time, during after hour meetings and dinners, Millennium's COO, Cedric Henry, made statements about creating a "whiter" and "younger" look for Millennium by moving older and non-Caucasian employees to less visible positions. Soon after Henry began making these comments, he told Taylor that he planned to replace black managers with Caucasian managers, even if they were less qualified. Plaintiff told Henry that this course of action was illegal. Shortly thereafter, Taylor was sent to Belcamp/Aberdeen, Maryland, to help open a new satellite office. Taylor asserts that this transfer was a demotion because she was no longer involved in making key decisions in the company's corporate headquarters. In addition, Kevin Jennings, Millennium's CEO stated in a manager and executive meeting that he did not want Taylor to have "manager" in her title.

Taylor next alleges that, in general, Millennium discriminated against African-American employees by giving them fewer raises and promotions than the Caucasian employees. Taylor also alleges Millennium promoted younger employees who were less qualified and experienced than older employees who were not promoted. Plaintiff alleges that she specifically was discriminated against when she requested a promotion to Operations Manager in January of 2012 and was denied. The Operations Manager position was never considered open, but a few months later, Millennium promoted Brent Ishizaki to Operations Manager. Ishizaki is Caucasian and under 40 years old. Taylor maintains that she was more qualified for the position than Ishizaki because she had more work experience. Taylor has identified Ishizaki as an employee who held

2

an analogous position to her. Taylor maintains that her responsibilities were similar to Ishizaki's, but she was paid $35,000 less than Ishizaki.

Taylor next alleges that the African-Americans that worked at Millennium were subject to conduct that created a hostile work environment. In support of this hostile work environment claim, Taylor alleges that in May of 2013 African-American employees were not given bonuses while Caucasian employees were. Caucasian employees were also permitted to work at home on occasion while African-American employees were not. Further, Taylor alleges that Millennium terminated eleven minority employees over the last three years while it allowed Caucasian employees with performance issues to remain with the company or resign. In addition, Taylor alleges that Henry made several discriminatory comments to Plaintiff about African-Americans. For example, Henry told Plaintiff that he "did not trust African-Americans because they are always trying to take the easy way out." Taylor says all of these things created a hostile work environment.

On May 27, 2014, Taylor filed a complaint with the EEOC, alleging race discrimination, age discrimination, and retaliation. Taylor received a right to sue letter from the EEOC on May 19, 2015.

Plaintiff filed her Complaint in this Court on August 15, 2015. This Court dismissed the Complaint on a 12(b)(6) motion on December 18, 2015. Taylor then filed an Amended Complaint on January 19, 2016. Taylor asserts four causes of action, two of which assert multiple grounds on which they rest. They are as follows:

(1) Violation of Title VII

      (a) based on race; and

      (b) based on "racial disparate impact";

3

(2) Violation of 42 U.S.C. § 1981 for

    (a) failure to promote based on race;

    (b) demotion based on race;

    (c) hostile work environment based on race;

    (d) retaliation based on race;

    (e) disparate impact based on race; and

    (f) unequal pay based on race;

(3) Violation of the Age Discrimination Act; and

(4) Violations of the Equal Pay Act.

## II. Legal Standard

### A. Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a claim based on a court's lack of subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proving jurisdiction exists. *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "The district court should apply the standard applicable to a motion for summary judgment," and should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

### B. Rule 12(b)(6): Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir . 2011)). Accordingly, a complaint may survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III. Discussion

Defendant seeks dismissal of all four of Taylor's claims. First, Defendant seeks the dismissal of Count I and Count III under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendant alleges that the Court lacks subject matter jurisdiction over these claims because Plaintiff has failed to exhaust her administrative remedies as to these claims. Second, Defendant seeks to dismiss Count II because Plaintiff has failed to sufficiently allege

facts to support this cause of action. Third, Defendant argues that Count IV must be dismissed because it is time-barred and insufficiently pled.

### A. Motion to Dismiss Under Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Defendant first argues that this Court lacks subject matter jurisdiction over Counts I and III because Plaintiff has failed to exhaust her administrative remedies as to those claims. "Before a plaintiff may file suit under Title VII or the ADEA, [s]he is required to file a charge of discrimination with the EEOC." *Jones v. Calvert Grp.*, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citing 42 U.S.C.A. § 2000e-5(f)(1) (Title VII) and 29 U.S.C.A. § 626(d) (ADEA)). An individual alleging a violation of Title VII or the ADEA must file an administrative charge within 180 days after an alleged discriminatory act occurs, or within 300 days of the alleged discriminatory act if that individual presented the claim to a state deferral agency. *Id.* (citing *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998)). Plaintiff filed her charge of discrimination with the EEOC on June 2, 2014.[2] The parties agree that the appropriate limitations period for filing a charge with the EEOC in this case is 300 days. *See Tinsley*, 155 F.3d at 439. Thus, only discriminatory acts that occurred after August 6, 2013, are covered by the charge of discrimination.

Defendant asserts that the Title VII claim is based on Plaintiff's transfer to Millennium's Maryland office in March of 2012 and on her "vague" allegation that Millennium hired Caucasian employees for positions with high client visibility and interaction. Defendant argues that these events occurred before August 6, 2013, and are

---

[2] The parties dispute the date on which the charge was filed with the EEOC. The paperwork was signed and dated by Lisa Taylor on May 27, 2014. The paperwork was not received by the agency until June 2, 2014. The proper date on which to measure the 300 limit is the day the paperwork was received by the EEOC. Thus, June 2, 2014, is the relevant date in this case.

therefore not covered by the charge of discrimination. Similarly, Defendant asserts that Plaintiff's ADEA claim is based on age related comments that one of Millennium's principals made prior to Plaintiff's transfer to the Maryland office. Again, as the transfer occurred in 2012, Defendant argues that these alleged discriminatory acts are not covered by the charge of discrimination.

Plaintiff argues, in response, that the Lilly Ledbetter Fair Pay Act of 2009 ("FPA") contravenes Defendant's argument. The FPA, passed by Congress in 2009 in response to the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, (2007), provides that "an unlawful employment practice occurs . . . when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid." 42 U.S.C. § 2000e–5(e)(3)(A)). Under the FPA, each pay period triggers a new 300 day clock for filing a Title VII discriminatory compensation claim. "A plaintiff who has filed a timely EEOC charge for at least one instance of pay discrimination can recover back pay for pay discrimination that occurred in the two years prior to the filing of the EEOC charge, if the discrimination that occurred outside the charge period is 'similar or related to' the unlawful practice in the timely-filed EEOC charge." *Johnson v. Portfolio Recovery Associates, LLC*, 682 F. Supp. 2d 560, 585 (E.D. Va. 2009).

Although the Fourth Circuit has not addressed it, several other Circuits have held that "the FPA covers [only] compensation decisions and not other discrete employment decisions." *Noel v. The Boeing Co.*, 622 F.3d 266, 274 (3d Cir. 2010). This is because compensation decisions "are often concealed and not discovered until long after the 180– or 300–day administrative period expires." *Id.* In contrast, adverse employment actions such as

7

termination, demotion, and failure to promote, are "easy to identify as discriminatory" when they occur. *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 645 (2007) (Ginsburg, J., dissenting); *see also Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 630 (10th Cir. 2012) ("[T]he Fair Pay Act did not create a limitations revolution for any claim somehow touching on pay. . . . [H]iring, firing, promotion, demotion, and transfer decisions, though often touching on pay, should and do accrue as soon as they are announced.") (quotations and citations omitted). The FPA thus does not function to make long expired discrete acts of discrimination timely. The Court finds this position is consistent with the purpose of the FPA, and adopts it now.

Plaintiff predicates her race and age discrimination claims, in part, on her transfer to the Maryland office, which she characterizes as a demotion. As explained above, a demotion is a discrete employment decision that is not covered by the FPA. Thus, the FPA cannot make the "demotion" timely when it occurred more than 300 days before Taylor filed her charge of discrimination.

Plaintiff next argues that her transfer to Maryland, and Millennium's other discriminatory conduct, was part of a "continuing violation" of the anti-discrimination statutes.[3] Courts have applied the "continuing violation doctrine" to "serial violations." *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 812 (E.D. Va. 2003). Under this doctrine, "[i]f one act in a continuous history of discriminatory conduct falls within the charge filing period, then acts that are plausibly or sufficiently related to that act which fall outside the filing period may be considered for purposes of liability even though these acts cannot serve as the basis for an EEOC charge." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536

---

[3] This argument is, inexplicably, made in the section addressing the 12(b)(6) claim.

U.S. 101 (2002)). Plaintiff argues that all of the alleged discriminatory conduct is timely because it was all part of a continuing violation.

Plaintiff's "continuing violation" theory is also unavailing. The Supreme Court took up the continuing violation doctrine in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In that case, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. The Court distinguished discrete acts such as a demotion, from a hostile work environment, which involves repeated conduct. Because hostile work environment claims are "based on the cumulative effect of individual acts," courts can consider "the entire time period of the hostile environment" so long as "an act contributing to the claim occurs within the filing period." *Id.* at 115-17. Insofar as Taylor bases her Title VII and ADEA claims on her transfer to the Maryland office, a discrete employment decision, the continuing violation doctrine does not apply and cannot make the claim timely.

Nevertheless, in addition to complaining of her transfer to the Maryland office, Taylor also appears to predicate her Title VII and ADEA claims on unequal pay. Specifically, Taylor alleges that she was paid $35,000 less than Brent Ishizaki, a Caucasian man who was under 40 years old who performed work similar to her. Taylor further alleges that she received this unequal pay bi-monthly until she was terminated in October of 2014. Taylor has thus alleged that she received a discriminatory paycheck within the 300 days prior to filing her EEOC charge. This is enough to satisfy the administrative exhaustion requirement. Therefore, the Court finds that Counts I and III are timely only to the extent that they are based on wage discrimination. Accordingly, the Court will deny the Motion to Dismiss

9

Counts I and III, with the caveat that they may only proceed on a theory of pay discrimination.

### B. Motion to Dismiss § 1981 Claim Under Rule 12(b)(6)

Taylor's second cause of action alleges a violation of 42 U.S.C. § 1981 based on six different grounds: (a) failure to promote based on race; (b) demotion based on race; (c) hostile work environment based on race; (d) retaliation based on race; (e) disparate impact based on race; and (f) unequal pay based on race. "Section 1981 prohibits race discrimination in forming and enforcing contracts." *Best Med. Int'l, Inc. v. Wells Fargo Bank, N.A.*, 937 F. Supp. 2d 685, 695 (E.D. Va. 2013). Where there is no direct or circumstantial evidence of discrimination, § 1981 discrimination claims are analyzed under the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001). The parties agree that this is the appropriate way to analyze Plaintiff's § 1981 claim. In this three-step framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which gives rise to a presumption of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Second, if a prima facie case is shown, the burden shifts to the defendant to offer legitimate, nondiscriminatory reasons for taking the employment action. *Id.* Third, if the defendant meets this burden, plaintiff must show, by a preponderance of the evidence, that the defendant's proffered reasons are pretext for discrimination. *Id.* Each sub-claim Taylor has asserted will be addressed below.

### (a) Failure to Promote Base on Race

To state a prima facie case for failure to promote, a plaintiff must allege that "(1) she is a member of a protected class; (2) her employer had an open position for which she applied; (3) she was qualified for the position; [and] (4) she was rejected for the position under circumstance

10

giving rise to an inference of unlawful discrimination." *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004). Defendant argues that Plaintiff has not alleged the second element: that she applied for an "open position." Plaintiff alleges that she requested to be promoted to an Operations Manager position, but Defendant argues that position was never open.

The Fourth Circuit has held that when an "employer fails to make its employees aware of vacancies" the second element is relaxed somewhat. *Williams v. Giant Food Inc.*, 370 F.3d 423, 431 (4th Cir. 2004). Other Circuits have held that the second element is also relaxed when an employer seeks out candidates for promotion, rather than having employees apply for positions. *Box v. A & P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir. 1985) (stating that "[w]hen an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the prima facie case is loosened somewhat"). The Fourth Circuit has neither disavowed nor approved this position taken by at least the Seventh Circuit. The Court finds it appropriate to relax the second element in both situations. In both cases, the employer could evade a failure to promote charge by essentially never providing the employee with an opportunity to apply for a position, either by not telling an employee about an open position or seeking out candidates to fill positions while never formally declaring the position open.

The Court finds it appropriate to relax the second element in this case. Although the Operations Manager position was never considered "open," Plaintiff alleges that Brent Ishizaki was internally identified and promoted into the position several months after she asked to take over that position. Because the position was available, but Millennium never accepted applications for it, it is appropriate to relax the second element.

When the second element is relaxed, the Seventh Circuit still requires an employee plaintiff to establish that had the employer accepted applications for the position, and made this fact known, she would have applied. *Id.* Plaintiff has satisfied this test. Plaintiff alleged that before Ishizaki was made Operations Mangers she had directly asked to be promoted into that position. This demonstrates that had Plaintiff been able to apply for the Operations Manager position, she would have. On these facts, the Court concludes that Plaintiff has adequately alleged the second element of her prima facie failure to promote claim. As this is the only element Defendant has attacked, the Court denies the Motion to Dismiss Taylor's failure to promote claim.

### (b) Demotion Based on Race

In the next sub-claim, Plaintiff alleges that she was demoted, because of her race, when she was transferred to the Maryland office in 2012. In order to allege a prima facie case of racial discrimination under § 1981, a plaintiff must allege: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly-situated employees outside the protected class received different treatment. *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327 (2012). Defendant argues that Taylor has not alleged the third or fourth elements of this claim.

#### (i) Whether Plaintiff Has Alleged an Adverse Employment Action

Defendant first argues that Plaintiff has not alleged that she suffered an "adverse action" because the facts alleged do not support her claim that she was demoted. "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371,

12

375 (4th Cir. 2004) (quotations and citations omitted). A reassignment will only be considered an adverse action "if the plaintiff can show that the reassignment had some significant detrimental effect." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999). "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Id.* at 256-57. Defendant argues that Taylor's transfer to the Maryland office was a lateral transfer, not a demotion. It is true that Plaintiff does not allege that she received less pay or a decrease in job title. However, Plaintiff does allege that she experienced a reduction in responsibility. Taylor alleges that while at the corporate office she managed the day-to-day company operations, the corporate office's operations costs, and personnel decisions. After being transferred she no longer had these responsibilities and was managing far fewer employees.

These allegations are enough to survive a motion to dismiss. Plaintiff has alleged that she had fewer responsibilities after the transfer and she has articulated what those responsibilities were. Whether there was actually a significant difference in responsibilities that had some "detrimental effect on her" is more appropriately evaluated at the summary judgment stage, after discovery has been conducted. Accordingly, the Court finds Taylor has adequately alleged an adverse employment action.

### (ii) Whether Plaintiff has Alleged That Similarly-Situated Employees Outside the Protected Class Received Different Treatment

Defendant next argues that Plaintiff has not sufficiently alleged the fourth element: that she was treated differently from similarly-situated employees outside of the protected class. Taylor has identified Brent Ishizaki as a "similarly situated" employee that was treated differently. Taylor "is not required as a matter of law to point to a similarly situated white

comparator in order to succeed on a race discrimination claim." *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 545 (4th Cir. 2003). However, the fourth prong can be satisfied by identifying a comparator and if the plaintiff choses to satisfy the fourth prong in this way, as Taylor has done here, then "the validity of [her] prima facie case depends upon whether that comparator is indeed similarly situated." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). A comparator is similarly situated if they are similar "in all relevant respects." *Id.* Such a pleading includes alleging that the employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). However, the comparator need not hold an identical position to the plaintiff. *Bateman v. Am. Airlines, Inc.*, 614 F. Supp. 2d 660, 674 (E.D. Va. 2009). Such a requirement would make it virtually impossible for an employee to make out a prima facie case where the plaintiff holds a unique position. *Id.*

Plaintiff alleges that while she managed the operations of employees in the corporate office, Ishizaki managed the operations of employees out in the field. Taylor also alleges that their duties were so similar that she was often tasked with performing Ishizaki's responsibilities. However, Taylor does not clearly articulate what those responsibilities were. Next, Taylor alleges that she reported to the CEO and COO while Ishizaki reported to the VP of Operations. Finally, Taylor alleges that they had similar working conditions, but does not describe what those conditions were.

The Court finds that Taylor has sufficiently alleged that she is similarly situated to Ishizaki and that this question is better addressed at the summary judgment stage. Taylor held a

somewhat unique position within Millennium, but this should not bar her from pursuing a

discrimination claim. As of now it is not clear what aspects of Taylor's and Ishizaki's positions

are relevant to this inquiry. Because Taylor has generally alleged that she shared the same job

responsibilities and working conditions as Ishizaki, the Court finds the fourth element has been

adequately alleged. Because Taylor has adequately alleged both the third and fourth elements of

her demotion claim, the only two elements Defendant attacked, the Court finds good cause to

deny the Motion to Dismiss this claim.

### (c) Hostile Work Environment Based on Race

Plaintiff's next sub-claim alleges that Millennium created a hostile work environment

based on her race. To state a hostile work environment claim, a plaintiff must allege that: "(1)

she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or

age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of

employment and create an abusive atmosphere; and (4) there is some basis for imposing liability

on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

"To be actionable, the conduct must create an objectively hostile or abusive work environment,

and the victim must also perceive the environment to be abusive." *Spriggs v. Diamond Auto

Glass*, 242 F.3d 179, 184 (4th Cir. 2001). "Conduct that is not severe or pervasive enough to

create an objectively hostile or abusive work environment—an environment that a reasonable

person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift

Systems, Inc.*, 510 U.S. 17, 21 (1993). In determining whether a work environment is hostile, the

Fourth Circuit has directed courts to consider the totality of the circumstances, including the

following five factors: "(1) the frequency of the discriminatory conduct; (2) its severity; (3)

whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the

conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted." *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 193 (4th Cir. 2000) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Taylor complains that she and other African-America employees were passed over for promotions that were given to Caucasian employees, Caucasian employees were given bonuses while African-American employees were not, and Caucasian employees were generally paid more. Further, Taylor alleges that Millennium's COO made several discriminatory statements about African-Americans. For example, Taylor alleges that the COO said he wanted to place Caucasian people in leadership positions to give the company a "whiter" look. Plaintiff also alleges that he said that "black people did not project the right image" and that he "did not trust African-Americans because they are always trying to take the easy way out."

Considering these allegations, the Court concludes that Plaintiff has not alleged that Millennium created a work environment that was sufficiently hostile or severe. First, Plaintiff makes no allegation about the specific dates of these comments. Plaintiff does allege that Henry expressed on a weekly basis, at after-hours meetings and dinners, his desire to create a "whiter" and "younger" look for Millennium. However, Plaintiff does not allege that she actually attended those meetings and dinners or heard those comments. Rather, the Complaint only asserts that Joseph Pettiford, Millennium's Human Resources Manager, heard those comments. This is significant because only comments that Plaintiff was actually aware of contribute to her hostile work environment claim. *See Fuelling v. New Vision Med. Labs. LLC*, 284 F. App'x 247, 259 (6th Cir. 2008). From the allegations put forth in the Complaint, the Court can fairly assume that the comments Taylor actually heard were isolated or infrequent occurrences.

16

Next, these comments, while offensive, are not physically threatening or humiliating, and are not as severe as the types of comments that are usually found to create a hostile work environment. *See, e.g., Spriggs*, 242 F.3d at 184-86 (finding hostile work environment where plaintiff received racist comments every day and was called "nigger," "monkey," and other racial slurs). In addition, plaintiff has not alleged how the comments or unequal treatment interfered with her work performance or caused her psychological harm.

The Fourth Circuit has generally found that a work environment is hostile "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, (1993) (citations and quotations omitted). In *Riley v. Buckner*, the Fourth Circuit held that the Plaintiff barely stated a hostile work environment claim where the Plaintiff had alleged that her boss "constantly communicated to [her] with profanity and suggestive and sexually explicit language," and that her boss created a "work environment and atmosphere saturated with sexual suggestion, innuendo, and proposition." 1 F. App'x 130, 134 (4th Cir. 2001). The Court found that these general allegations, "coupled with a specific example" of sexual harassment, were enough to state a plausible claim. *Id.* In contrast, in *Sonnier v. Diamond Healthcare Corp.*, 114 F. Supp. 3d 349, 357 (E.D. Va. 2015), this Court found the plaintiff had not alleged a sufficiently severe work environment where she complained of three isolated sexual comments." This case is closer to *Sonnier*. Like in *Sonnier*, Taylor has alleged that Millennium's COO made a few comments that were not threatening, humiliating, or ridiculing. In addition, Plaintiff has not cited any case that has held that the type of unequal treatment alleged here, such as discriminatory pay, creates a hostile work environment.

After considering the five relevant factors, the Court concludes that the conduct Plaintiff has alleged is not sufficiently severe or hostile to support a hostile work environment claim.

17

Accordingly, the Court finds good cause to grant the Motion to Dismiss Taylor's hostile work environment claim.

### (d) Retaliation Based on Race

A plaintiff states a claim for illegal retaliation under § 1981 if she alleges that (1) she engaged in protected activity, (2) she suffered an adverse employment action; and (3) the adverse action was taken because of the protected activity. *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003). In support of her claim, Plaintiff asserts that she was demoted by being transferred to Millennium's Maryland office after she complained to Millennium's COO that his plan to replace African-American managers with Caucasians was illegal. Defendant argues that the second and third elements have not been adequately pled.

As explained in the section on Plaintiff's demotion claim, Plaintiff has adequately alleged that her transfer to Maryland was a demotion. The same analysis applies to this claim and the Court again concludes that Taylor has alleged that she suffered an adverse employment action.

The Court now turns to the third element of the retaliation claim: the causal connection. The Complaint never actually alleges that Millennium transferred her to the Maryland office because she complained to Henry about his discriminatory comments. Rather, Plaintiff only alleges that she was transferred in March of 2012 and that this transfer occurred "[s]hortly after" Plaintiff complained about Henry's discriminatory comments.

"[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). However, the passage of time alone generally cannot provide proof of causation unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment

action" was "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001). Plaintiff has alleged that the transfer occurred "shortly after" her complaint, but because no dates have been given, it is not clear how much time actually passed between the two events. At oral argument the parties agreed that a four to five month time frame can be gleaned from the Complaint. Because Plaintiff is relying on the temporal proximity only to establish the causal connection, but fails to specify the actual temporal proximity, the Court finds that Taylor has failed to sufficiently plead a retaliation claim. Accordingly, the Court finds good cause to grant the Motion to Dismiss this claim.

### (e) Disparate Impact Based on Race

The next cause of action claims disparate impact based on race. Defendant points out that "[a] § 1981 action . . . must be founded on purposeful, racially discriminatory actions." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). Disparate impact claims challenge "employment practices that are facially neutral in their treatment of different groups but that, in fact, fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). Disparate impact claims are thus inherently not based on purposeful discrimination. Accordingly, a disparate impact claim is not viable under § 1981. Taylor does not contest this. The Court, therefore, finds good cause to grant the Motion to Dismiss this claim.

### (f) Unequal Pay Based on Race

Neither Plaintiff nor Defendant discuss Taylor's sixth sub-claim under Count II, which alleges unequal pay based on race under § 1981. Because it was not addressed, the Court will not dismiss this sub-claim at this time.

### C. Motion to Dismiss Equal Pay Act Claim Under Rule 12(b)(6)

Defendant finally seeks to dismiss Plaintiff's Equal Pay Act (EPA) claim, arguing that it is untimely and that the Complaint fails to sufficiently allege this cause of action.

#### (i) Timeliness of EPA Claim

"Under the Equal Pay Act, an action shall be forever barred unless commenced within two years after the cause of action accrued." *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 345-46 (4th Cir. 1994) (quoting 29 U.S.C. § 255(a)). "The Supreme Court has indicated that the statutes of limitations for actions predicated upon employment discrimination are triggered at the time when the alleged discriminatory act occurred, and not at the time when the last discriminatory effects have been manifested." *Id.* (quotations and citations omitted). Where a plaintiff complains of unequal compensation under the EPA, "the issuance of each diminished paycheck constitutes a discriminatory act." *Id; see also Earl v. Norfolk State Univ.*, 2014 WL 2916718, at *13 (E.D. Va. June 26, 2014).

Plaintiff filed her Complaint on August 17, 2015. Thus, the discriminatory pay practice must have occurred after August 17, 2013, to fall within the statute of limitations.[4] Plaintiff continued to work at Millennium until October of 2014. Plaintiff alleges that she was paid bi-monthly and that each paycheck she received was less than a male comparator. Accordingly, Plaintiff's EPA claim is timely because she received some allegedly discriminatory paychecks after August 17, 2013.

#### (ii) Sufficiency of EPA Claim

To state a prima facie case of wage discrimination under the EPA, a plaintiff must allege: "(1) that employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are

---

[4] The statute of limitations for a willful violation of the EPA is three years.

performed under similar working conditions." *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 613 (4th Cir. 1999) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). "To establish a prima facie case, it is not necessary for a plaintiff to prove that the work of her comparators is identical in every aspect—'equal work' does not mean 'identical work.'" *Kennedy v. Virginia Polytechnic Inst. & State Univ.*, 781 F. Supp. 2d 297, 300 (W.D. Va. 2011) (quoting 29 C.F.R. § 1620.14(a)). Rather, the jobs need only be "substantially equal." *Brennan v. Prince William Hosp. Corp.*, 503 F.2d 282, 291 (4th Cir. 1974). "The crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical." *Brewster v. Barnes*, 788 F.2d 985, 991 (4th Cir. 1986) (quoting *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 156 (3d Cir. 1985)). If the jobs have a "'common core' of tasks," the "inquiry then turns to whether the differing or additional tasks make the work substantially different." *Id.*

Taylor has again identified Ishizaki as a comparative employee. Taylor alleges that she performed similar work to Ishizaki and that their jobs required the same skill, effort, and responsibility. However, Taylor also alleges that they reported to different supervisors and that they supervised different types of employees.

The Court, again, finds that it is too soon to rule on the question of whether Ishizaki's is an adequate comparator. The Court finds Taylor's general allegations to be sufficient at this stage and the Court finds it appropriate to give the parties an opportunity to gather concrete evidence on the relevant aspects of the two employees' positions. Accordingly, the Court finds good cause to deny the Motion to Dismiss Taylor's EPA claim.

## IV. Conclusion

As outlined above, the Court ORDERS that the Motion to Dismiss is DENIED in part and GRANTED in part.

First, the Court ORDERS that the Motion to Dismiss Counts I and III for lack of subject matter jurisdiction under Rule 12(b)(1) is DENIED.

Second, the Court ORDERS that the Motion to Dismiss Count II for failure to state a claim is GRANTED in part and DENIED in part. The Court GRANTS this Motion as to sub-claims (c) hostile work environment, (d) retaliation, and (e) disparate impact. The Court therefore ORDERS that these three sub-claims are DISMISSED WITH PREJUDICE. The Court DENIES this Motion as to sub-claims (a) failure to promote, (b) demotion, and (f) unequal pay.

Third, the Court ORDERS that the Motion to Dismiss Count IV, the Equal Pay Act claim, is DENIED.

An appropriate Order will issue.

March 4, 2016
Alexandria, VA

/s/
Liam O'Grady
United States District Judge

22